United States Court of Appeals,

Eleventh Circuit.

No. 94-8992.

Athel B. COOPER, Plaintiff-Appellant, Cross-Appellee,

v.

William E. SMITH, Individually and in his official capacity as Sheriff of Camden County, Georgia, Defendant-Appellee, Cross-Appellant.

July 26, 1996.

Appeals from the United States District Court for the Southern District of Georgia. (No. CV293-70), Anthony A. Alaimo, Judge.

Before ANDERSON and BLACK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

ANDERSON, Circuit Judge:

In 1993 appellant/cross-appellee Athel B. Cooper ("Cooper") filed the instant 42 U.S.C. § 1983 action against appellee/cross-appellant William E. Smith ("Smith"). Smith is the Sheriff of Camden County, Georgia, and Cooper was one of his deputies. Cooper alleges that Smith refused to renew his commission as a deputy because Cooper cooperated with the Georgia Bureau of Investigation (GBI) during their investigation into corruption at the Camden County Sheriff's Department. The district court granted in part and denied in part Smith's motion for summary judgment on qualified immunity grounds. This appeal followed.

*Facts*

"In reviewing the district court's denial of summary judgment, we—in most qualified-immunity interlocutory appeals—accept the facts which the district court assumed for purposes of its decision about whether the applicable law was

clearly established." *Ratliff v. DeKalb County, Georgia,* 62 F.3d 338, 340 (11th Cir.1995) (citing *Johnson v. Jones,* --- U.S. ----, ----, 115 S.Ct. 2151, 2159, 132 L.Ed.2d 238 (1995)); *see also Dolihite v. Maughon by and through Videon,* 74 F.3d 1027, 1033 n. 3 (11th Cir.1996) (explaining that the appellate court might ordinarily simply accept the district court's identification of each appellant's actions and knowledge for purposes of comparison with clearly established law); *Johnson v. Clifton,* 74 F.3d 1087, 1091 (11th Cir.1996), *petition for certiorari filed* 64 USLW 3742 (Apr. 25, 1996) (NO. 95-1743).

The following are the relevant facts assumed by the district court:

> In 1991 or 1992, the [Georgia Bureau of Investigation ("GBI") ] began an investigation of alleged corruption in the Camden County Sheriff's Department. In July of 1992, Cooper and his wife ... gave information to the GBI which they believed would be kept confidential. The Coopers' conversations with the GBI took place at the Coopers' home. According to the Coopers, Smith and others in the Department found out about the Coopers' cooperation with the GBI. After the Coopers spoke to the GBI, the Camden County Grand Jury returned an indictment against Smith. Smith was reelected as Sheriff of Camden County soon after his indictment.[1] Following Smith's reelection, Cooper began to hear rumors that he would no longer have a job when Smith's new term began in 1993.
>
> Seeking clarification of his job situation, Cooper wrote a letter to Major Charles A. Easterling ..., the Acting Chief Deputy of the Department, on November 24, 1992. In Easterling's response, dated December 9, 1992, he declined to give Cooper a promotion or assurances of job security. On December 17, 1992, Cooper wrote to Smith in response to Easterling's letter ... [detailing his discontent with matters within the Department].
>
> [1] The indictment against Smith was later dismissed.

*Cooper v. Smith,* 855 F.Supp. 1276, 1277 (S.D.Ga.1994). [1] On

---

[1]The judgment of the district court as reflected in this published opinion was modified in a subsequent order dated August

December 29, 1992, Smith told Cooper that his commission as deputy sheriff would not be renewed for the following year.

Cooper filed the instant suit, alleging that he had been dismissed in retaliation for exercising his right to free speech in violation of the First Amendment to the United States Constitution.[2] The district court granted Smith's motion for summary judgment in part and denied it in part. As to the First Amendment claim against Smith in his individual capacity, the district court held that Smith was entitled to qualified immunity with respect to Cooper's speech contained in the December 17, 1992, letter. However, the district court held that Smith was not entitled to qualified immunity with respect to Cooper's speech in cooperating with the GBI. *Cooper v. Smith,* No. CV293-70, slip op. at 12 (S.D.Ga. Aug. 4, 1994).

Cooper appeals the district court's grant of summary judgment with respect to the speech contained in the December 17, 1992, letter. The district court's ruling on this issue is not a final order. FED.R.CIV.P. 54(b); *Winfrey v. School Bd. of Dade County, Fla.,* 59 F.3d 155, 157 (11th Cir.1995) (In the absence of certification by the district court, "a partial disposition of a multiclaim or multiparty action does not qualify as a final

---

4, 1994.

[2]Cooper also asserted an equal protection claim. The district court granted defendant's motion for summary judgment and dismissed Cooper's equal protection claim. Cooper does not challenge that ruling in this appeal. In addition, in the district court Smith sought summary judgment with respect to Cooper's claim against him in his official capacity. The district court declined to address Smith's argument in this regard. Smith does not challenge this ruling on appeal, and thus we do not address it.

judgment [under § 1291] and is ordinarily an unappealable interlocutory order.") (internal quotations omitted). Assuming *arguendo* that we have pendent jurisdiction, we decline to exercise it. Smith cross-appeals, challenging the district court's denial of qualified immunity with respect to Cooper's speech in cooperating with the GBI. This denial of qualified immunity is immediately appealable. *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). We affirm this ruling.

## *Discussion*

The appealable issue in this case is whether a public official who terminates an employee for cooperating with law enforcement investigators is entitled to qualified immunity.[3] "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2740, 73 L.Ed.2d 396 (1982). That Smith was performing a discretionary function when he refused to renew Cooper's commission is not in dispute. For Cooper to pierce the qualified immunity protecting Smith, he must show that Smith violated one of Cooper's

---

[3]The district court determined that Cooper had adduced sufficient evidence to create a jury question as to whether Cooper's speech in cooperating with the GBI caused Smith to terminate him. *Cooper v. Smith,* CV293-70, slip op. at 14 (S.D.Ga. Aug. 4, 1994). To the extent that Smith challenges that determination on appeal, we decline to address Smith's argument, which amounts to an evidentiary sufficiency issue not itself immediately appealable. *See Johnson v. Jones,* --- U.S. at ----, 115 S.Ct. at 2156; *Cottrell v. Caldwell,* 85 F.3d 1480 (11th Cir.1996); *Dolihite,* 74 F.3d at 1033 n. 3; *Johnson v. Clifton,* 74 F.3d at 1091.

"clearly established" rights under federal law. *Id.*

It must be kept in mind that the sweep of qualified immunity is necessarily broad. It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). The policy considerations driving such a rule are straightforward: government officials exercising their official discretion in the discharge of their duties cannot live in constant fear of lawsuit, with the concomitant costs to public servant and society. Such fear will stymie the work of government and will "dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties." *Harlow,* 457 U.S. at 814, 102 S.Ct. at 2736 (quoting *Gregoire v. Biddle,* 177 F.2d 579, 581 (2nd Cir.1949)). The doctrine of qualified immunity was created to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Id.* at 818, 102 S.Ct. at 2738.

At the same time, qualified immunity is not an impenetrable shield, because of which all manner of constitutional violations by public officers must be tolerated. "When government officials abuse their offices, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees.' " *Anderson,* 483 U.S. at 638, 107 S.Ct. at 3038 (quoting *Harlow,* 457 U.S. at 814, 102 S.Ct. at 2736). In an effort to balance these competing concerns, the Supreme Court has devised an objective test for evaluating official conduct. "[W]hether an official protected by qualified immunity may be held personally liable for an

allegedly unlawful official action generally turns on the "objective legal reasonableness' of the action assessed in light of the legal rules that were "clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (internal citations omitted).

Cooper argues that Smith refused to renew his commission because he cooperated with the GBI in their corruption investigation. We must determine whether Cooper had a clearly established right under the First Amendment to speak with the GBI. If we find that such a right was clearly established, then Smith is stripped of the protection that qualified immunity affords, insofar as Cooper's speech in cooperating with the GBI caused Smith's adverse employment action.

"It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987). Nonetheless, the First Amendment does not protect all speech by public employees. In *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Supreme Court outlined the balancing test through which public employee free speech claims are to be evaluated. This test is designed to balance the interest of the employee in commenting on matters of public concern against the interest of the employer in the efficient delivery of public services. *Id.* at 568, 88 S.Ct. at 1734-35. "Because no bright-line standard puts the reasonable public employer on notice of a constitutional violation, the

employer is entitled to immunity except in the extraordinary case where *Pickering* balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful." *Dartland v. Metropolitan Dade County,* 866 F.2d 1321, 1323 (11th Cir.1989); *accord Hansen v. Soldenwagner,* 19 F.3d 573, 576 (11th Cir.1994).

We must decide whether the result of the *Pickering* balance on the assumed facts would lead to the inevitable conclusion that Cooper's discharge was unlawful, such that Sheriff Smith could not have believed that his actions were lawful in light of clearly established law and the information he possessed. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039-40. In applying the *Pickering* test, we first ask if Cooper's speech to the GBI can be "fairly characterized as constituting speech on a matter of public concern." *See Rankin,* 483 U.S. at 384, 107 S.Ct. at 2897 (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983)); *Bryson v. City of Waycross,* 888 F.2d 1562, 1565 (11th Cir.1989). This is done by examining the content, form and context of the speech. *Bryson,* 888 F.2d at 1565; *Dartland,* 866 F.2d at 1324. The Supreme Court in *Connick,* 461 U.S. at 146-47, 103 S.Ct. at 1689-90, held that the question of whether a public employee's speech is constitutionally protected turns on whether the speech relates to matters of public concern or to matters of merely personal interest to the employee. If the speech does not involve an issue of public concern, our inquiry ends there. *Id.* at 146, 103 S.Ct. at 1689-90; *see also Ferrara v. Mills,* 781 F.2d 1508, 1512 (11th Cir.1986). Second, if the speech involves an issue of public concern, we must balance Cooper's First

Amendment interest against Smith's interest in the efficient delivery of public services. *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734-35; *Bryson,* 888 F.2d at 1565. Again the context and circumstances are considered.

In this qualified immunity context, we then have to determine whether the inevitable conclusion of the *Pickering* balance is that Cooper's discharge was unlawful. The district court found that Cooper's statements to the GBI involved matters of public concern, that his interest in making these allegations to the GBI were not outweighed by Smith's interest in the efficient management of his department, that Cooper's cooperation with the GBI was "pure whistle-blowing," and that Smith was therefore not entitled to qualified immunity. *Cooper v. Smith,* slip op. at 13 (S.D.Ga. Aug. 4, 1994). We affirm the district court's conclusions in this regard. There can be no doubt that corruption in a police department is an issue of public concern. At the same time, Sheriff Smith has a strong interest in the efficient operation of the Department. However, that interest is insufficient to overcome Cooper's interest in revealing to the GBI what he knows about illegal activities within the Department. Clearly, the law does not discourage public employees from cooperating with law enforcement in investigations of unlawful activities within their respective governmental organizations. This is, then, one of those "extraordinary case[s] in which the First Amendment conclusion would inevitably favor [the plaintiff] in light of *Pickering* balancing." *See Hansen,* 19 F.3d at 578.

An analysis of the case law reveals that it was clearly

established at the time Smith refused to renew Cooper's commission that it was a violation of Cooper's First Amendment rights to take adverse action against him for cooperating with an official law enforcement investigation. In *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1486-87 (11th Cir.1992), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993), we held that three supervisory police officers who allegedly retaliated against the plaintiffs for seeking to expose corruption within the police department were not entitled to qualified immunity. The plaintiffs, who were officers in the Birmingham Police Department Narcotics Unit, alleged that they were "whistleblowers" who "sought to expose allegedly corrupt connections between police, city officials and drug dealers" and that as a result of these efforts they were "exposed to retaliatory harassment, threats and transfers to keep them quiet about affairs that might be a matter of public concern." *Id.* at 1486.

We found *Oladeinde* to be one of those cases where the "inevitable conclusion," that the defendants had violated the plaintiffs' freedom of speech, would be reached. *Id.* at 1487; *see also Brawner v. City of Richardson, Tex.,* 855 F.2d 187, 193 (5th Cir.1988) (noting that it is clearly established that a public employee's speech revealing improper conduct by fellow employees is protected under the First Amendment). The similarity between the *Oladeinde* case and the case at bar is sufficient to have put a reasonable sheriff in Smith's position on notice that he could not constitutionally refuse to renew Cooper's commission for cooperating with the GBI.

Contrary to Smith's argument, the instant case is

distinguishable from *Dartland* and *Hansen*.  In both of those cases, the expression by the plaintiffs of personal dissatisfaction within an otherwise protected speech context removed their cases from "inevitable" status under the *Pickering* balance.  *See Dartland,* 866 F.2d at 1324 ("Although Dartland possessed a constitutional interest in expressing his view on a matter of public importance, the insulting nature of his words gives his speech an element of personal as opposed to public interest.");  *Hansen,* 19 F.3d at 577 (Though "[s]ubpoenaed deponents may generally be free to criticize their employers," the "manner of Hansen's speech was vulgar, insulting, and defiant.").  Only speech that relates to matters of public concern, not speech relating to matters of merely personal interest, is constitutionally protected. *Connick,* 461 U.S. at 146-47, 103 S.Ct. at 1689-90.

In contrast to the nature of the employee speech in *Dartland* and *Hansen,* where their insulting or vulgar manner rendered those words of personal rather than public concern, Cooper's speech in this case is clearly a matter of public concern.  The district court viewed the facts as "pure whistle-blowing," finding no evidence that Cooper did anything except express the facts as he knew them to the GBI, nor that he used his cooperation as an opportunity to denigrate the department through the expression of personal grievances.  To allow Smith to punish Cooper with impunity merely for speaking in a proper manner with the GBI would send a signal to public employees everywhere that it is better to remain silent than to cooperate with those officially charged with rooting out wrongdoing in public organizations.  This the law does not do.

*Conclusion*

Because the law was clearly established at the time that Cooper's speech to the GBI was constitutionally protected, Smith violated Cooper's First Amendment rights when he refused to renew his commission, insofar as that refusal was based on Cooper's cooperation with the GBI.  Thus, the district correctly concluded that Smith is not entitled to qualified immunity as to this allegation.

AFFIRMED.