**Duane R. OLSON, Plaintiff,**

v.

**Vic LOY, et al., Defendants.**

**Civil Action No. CV296–034.**

United States District Court,
S.D. Georgia,
Brunswick Division.

Oct. 23, 1996.

226

Duane R. Olson, Coleman, FL, pro se.

Melissa Stebbins Mundell, Delota L. Grantham, U.S. Attorney's Office, Savannah, GA, for Vic Loy, Robert Burns.

### ORDER

ALAIMO, District Judge.

Plaintiff, Duane R. Olson ("Olson"), brings this action against Defendants, Vic Loy ("Loy"), Robert Burns ("Burns"), and "others" as may be named later, for violations of his Constitutional rights pursuant to 42 U.S.C. § 1983, 18 U.S.C. §§ 241–42, 18 U.S.C. § 1964, and the Eighth Amendment. Currently before the Court is Defendants' motion to dismiss or, in the alternative, for summary judgment under Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure. For the reasons stated below, Defendants' motion to dismiss will be **DENIED IN PART and GRANTED IN PART.** Defendants' motion for summary judgment, however, will be **GRANTED.**

### FACTS

Plainly stated, Olson alleges that Defendants conspired to violate his First Amendment right to receive incoming mail while in prison. Defendants assert that they simply were following applicable prison guidelines and that denying Olson a single magazine issue was based entirely on security reasons.

Olson currently is incarcerated at the Federal Correctional Institution at Coleman, Florida, where he is serving a twenty-seven year sentence for conspiracy and possession with intent to distribute cocaine. The incidents leading to the case at bar occurred in December, 1994, and January, 1995, while Olson was incarcerated at the Federal Correctional Institution located in Jesup, Georgia ("Jesup").

While incarcerated, Olson had a subscription to *Prison Life* magazine ("magazine"). Loy, then Warden of Jesup, reviewed the January, 1995, edition of the magazine, and decided that forwarding it to Olson would cause a security risk within the prison. Pursuant to the regulations in place at that time, Loy informed Olson in writing that, due to security concerns, the magazine would not be delivered to him.

The magazine contained a lengthy article for which Olson was apparently interviewed. The article concerned allegedly illegal transactions by Unicor, which is the name given to Federal Prison Industries, Inc. The article named Olson as one of three plaintiffs who filed suit claiming that Unicor violated several federal laws, including hiring illegal aliens and engaging in prohibited sales transactions. The article details Olson's activities and the various allegations that he and two other federal prisoners have made against Unicor.

In a written memorandum to Olson, Loy explained that the article was detrimental to the security, good order, or discipline of the institution. *See* Memorandum from Vic Loy, Warden, Federal Correctional institution, Jesup, Georgia to Duane Olson No. 04931–424(D–1) (Dec. 15, 1994) ("memorandum"). Specifically, Loy was concerned that the substance of the article could lead to disruptive behavior among inmates, as well as between inmates and staff, since it contains the names of specific Jesup staff members. *Id.* Loy's concerns centered on the allegations in the article that Unicor employs illegal aliens instead of employing United States citizens. Loy apparently feared that those illegal aliens incarcerated in Jesup would be subjected to adverse treatment by other inmates.

Although the applicable prison regulations require that any decision to reject a publication be made by the Warden, the initial review was performed by Burns, the Inmate Systems Manager for Jesup. The memorandum clearly states that if Olson wished "to review" the rejected magazine, he could contact Burns for that purpose. *Id.* After several attempts to contact Burns, Olson ultimately was informed that he neither could have nor review the magazine.[1] The memorandum also states that Olson administratively could appeal Loy's decision within fifteen days of receipt of the memorandum, which Olson did not do.

Olson claims that Loy, Burns, and others, separately and collectively, acted knowingly, willfully, and intentionally to deprive him of his First Amendment rights. Olson claims that the magazine article did not legitimately jeopardize the authority, security or orderly running of Jesup. Rather, Olson asserts, the article only acts to inform any reader of a "peaceful and legitimate means and method of assisting legal law enforcement." (Pl.'s Am. Comp. at 6.)

Olson's specific claims are several. First, he alleges that Defendants have knowingly and willfully jeopardized his safety and life, in violation of 42 U.S.C. § 1983, 18 U.S.C. §§ 241–42, and 18 U.S.C. § 1964. Olson also contends that Defendants' actions have violated his Eighth Amendment right to be free from cruel and unusual punishment due to mental anguish, anxiety, and stress caused by fear.

Olson requests that the Court (1) declare that Defendants' actions willfully violated his Constitutional rights, (2) grant damages from each Defendant named in the amount of $25,-000 each, plus a minimum of $500 per day for each day that Defendants violated his rights, (3) grant treble damages as "punitive" damages, (4) direct the payment of all attorneys fees and costs incurred, and (5) grant any and all other relief that the Court deems appropriate. Olson has also requested a trial by jury in this matter.

## DISCUSSION

### I. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint on the ground that the plaintiff has failed to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) attacks the legal sufficiency of the complaint. In essence, the movant says, "Even if everything you allege is true, the law affords you no relief."

Consequently, in determining the merits of a 12(b)(6) motion, a court must assume that all of the factual allegations of the complaint are true, *e.g., United States v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335, 349 (1991); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990), and construe them in the light most favorable to the plaintiff. *E.g., Sofarelli v. Pinellas County,* 931 F.2d 718, 721 (11th Cir.1991).

In the case at bar, Olson has asserted a claim under 42 U.S.C. § 1983 for which, theoretically, relief could be granted. That claim is discussed below. Olson's other claims, however, are without merit, and for that reason Defendants' motion to dismiss will be granted on Olson's claims based upon 18 U.S.C. §§ 241–42, 18 U.S.C. § 1964, and the Eighth Amendment.[2]

---

**1.** Olson claims that when he went to speak to Burns about reviewing the magazine, one of the mail room officers quickly held up the magazine and stated, "This is the magazine we are not going to give you." (Olson Aff. at ¶ 17.) When Olson asked if he could simply look at the article inside the magazine, the officer responded, "No ... [y]ou can't even touch it!" (*Id.* at ¶ 20.)

**2.** For various reasons, these claims are without merit. Section 1964 grants jurisdiction to a federal district court to grant civil remedies in matters involving racketeer influenced organizations. *See* 18 U.S.C. § 1964. Section 1964 grants a private right of action for violations of any activi-

ty prohibited by § 1962, which largely involves racketeering activities. Olson has failed to allege any facts that would support such a claim against Defendants based on being deprived of a single issue of a magazine. Similarly, Olson has failed to allege *any* facts supporting his theory that Defendants conspired to violate his Constitutional rights in violation of §§ 241–42. Finally, deprivation of a single issue of a magazine is clearly not a violation of the Eighth Amendment. Such a claim is, at best, frivolous. *See Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (stating that violations of the Eighth Amendment be both objectively "suffi-

## A. Bivens Claim

The United States Supreme Court has stated that the type of censorship at issue "would raise grave First Amendment concerns outside the prison context." *Thornburgh v. Abbott,* 490 U.S. 401, 407, 109 S.Ct. 1874, 1878, 104 L.Ed.2d 459, 469 (1989). The *Thornburgh* Court reaffirms the principle that, although incarcerated, prisoners are not barred from asserting similar First Amendment claims. *Id.* There must be, however, a balance between a prisoner's Constitutional rights and the needs of the prison administration to operate an institution that is orderly and secure. *See id.; Turner v. Safley,* 482 U.S. 78, 85, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64, 76 (1987).

Olson, therefore, has asserted what is known as a *"Bivens"* claim. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (alleging that federal officers abused their authority in violation of the Constitution). Prior to discussing the merits of his *Bivens* claim, however, the Court must address the preliminary issues raised by Defendants.

[2] First, Defendants claim that Olson has not exhausted his administrative remedies as provided by the applicable prison regulations. Olson, unquestionably, has asked for both monetary and declaratory relief in this case. Where a party requests both monetary and equitable relief, exhaustion of administrative remedies is normally required. *See McCarthy v. Madigan,* 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992).

Olson's request for declaratory relief in this matter, however, is misplaced. As a *pro se* litigant, the Court has liberally construed Olson's complaint and has sorted through his claims and supporting documents to determine the actual substance of this matter. *Harris v. Evans,* 20 F.3d 1118 (11th Cir. 1994) (noting that *pro se* litigants are held to less stringent standards and are entitled to liberal construction of their pleadings), *cert. denied,* —— U.S. ——, 115 S.Ct. 641, 130 L.Ed.2d 546 (1994). Olson's request for de-

claratory relief simply asks the Court to determine, as a matter of law, that Defendants' actions violated his constitutional rights. An affirmative answer to that threshold question then could allow monetary relief. Thus, Olson's actual claim is one simply for monetary relief. Additionally, Olson apparently has abandoned his claim for declaratory relief, stating "that which the Plaintiff wants declared is the fact that the defendants have violated the law, and, as such, they are liable for damages." (Pl.'s Br. In Opp'n to Defs.' Mot. to Dismiss at 2.) Since the essence of Olson's claim is one for monetary relief, he is not required to exhaust his administrative remedies prior to asserting this action. *See McCarthy,* 503 U.S. at 149, 112 S.Ct. at 1088, 117 L.Ed.2d at 302 (1992).

■ The second preliminary issue raised by Defendants is whether Olson's claim lacks the legally required sufficiency to bring a *Bivens* suit. Defendants claim that Olson has failed to assert a claim properly and, therefore, the case should be dismissed. Olson has, in fact, set forth minimal facts concerning "who did what to whom and why." (Defs.' Mot. to Dismiss at 7 (citing *Dewey v. University of New Hampshire,* 694 F.2d 1, 3 (1st Cir.1982), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983).) The Court finds that Olson has satisfied the pleading requirement, and that his claim is properly stated. *See also* Fed.R.Civ.P. 8(a)(2) (requiring a short, plain statement showing that the plaintiff is entitled to relief).

■ Finally, the Court disagrees with Defendants that Olson's claim is an "insubstantial lawsuit." (*Id.* (citing *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).) Olson asserts a claim based upon his First Amendment rights. Although the Defendant's motion for summary judgment will be granted on other grounds, when a prisoner claims that a constitutional violation has occurred, it can hardly be categorized as "insubstantial."

The Court finds that Olson asserts a claim that is recognized by law for which relief, in theory, could be granted. Defendants' mo-

ciently serious" and deliberately indifferent to a     prisoner's health or safety).

tion to dismiss on this issue, therefore, will be denied.

Turning to Defendants' motion for summary judgment, the inquiry is not whether Olson has asserted a claim for which relief may be granted, but, rather, whether Defendants actually violated Olson's Constitutional rights, based on these facts, in denying him access to the magazine. As such, the Court will now evaluate this issue pursuant to the established standards governing motions for summary judgment.

## II. *Motion for Summary Judgment*

Summary judgment requires Defendants to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995). After the movant meets this burden, "the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Griesel v. Hamlin*, 963 F.2d 338, 341 (11th Cir.1992). Additionally, a "court need not permit a case to go to a jury ... when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible'." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir.1996). Furthermore, when the evidence is only circumstantial, summary judgment may be granted when a court "concludes that no reasonable jury may infer from the assumed facts the conclusions upon which the non-movant's claim rests." *Id.*

## A. Constitutional Violation

It is clear that Olson has a limited First Amendment right to receive incoming mail, even though he is incarcerated in a federal prison. It is also clear that Defendants are obligated to ensure the safety of both inmates and prison officials, as well as the overall orderly operation of the facility. A prison regulation virtually identical to that in question was evaluated by the United States Supreme Court and found to be Constitutional. *See Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).

In *Thornburgh*, the Supreme Court determined that regulations governing incoming mail to federal prisoners are "valid if ... reasonably related to legitimate penological interests." *Id.* at 413, 109 S.Ct. at 1881, 104 L.Ed.2d at 473. The Supreme Court determined that prison security is a legitimate penological interest and that considerable deference must be given to prison officials in determining whether to exclude certain publications. *Id.* at 415, 109 S.Ct. at 1882, 104 L.Ed.2d at 474–75. The Supreme Court concluded that "the broad discretion accorded to prison wardens by the [publication] regulations ... is rationally related to security interests." *Id.* at 416, 109 S.Ct. at 1883, 104 L.Ed.2d at 475. Finally, the Supreme Court noted that incoming publications only have to create "an intolerable risk of disorder," and that it is not necessary for any particular publication to lead to violence. *Id.* at 417, 109 S.Ct. at 1883, 104 L.Ed.2d at 475.

The Court finds that, given the discretion afforded to Defendants in this matter, and the reasonableness of the regulation in question, Olson has not suffered a violation of his Constitutional rights. As such, his *Bivens* claim is without merit.[3] Even making

---

3. Furthermore, Olson's claim based on § 1983 must fail. A claim made pursuant to § 1983 must be based upon the violation of an underlying Constitutional or statutory violation by a state actor. That section states that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, and citizen of the United States or other person within the

all inferences in favor of Olson, the Court finds that his claims are completely implausible. No reasonable jury could find that Olson's Constitutional rights were violated based upon these facts. Defendant, Loy, pursuant to the authority granted to him, determined that a magazine containing an inflammatory article about activities of the federal prison system, which also named Jesup officials, could lead to disorder. Such an article could lead, at least, to disorder, and, at worst, to serious violence. The article also contained inflammatory information about incarcerated illegal aliens, some of which are imprisoned at Jesup. Those prisoners could have been subjected to various levels of mistreatment, if the article were delivered to Olson. Finally, the article in question could have spurred violence toward the named prison officials.

Moreover, Defendant, Loy, withheld only a single issue of Olson's magazine, after reviewing its contents. It is significant that Loy did not deny Olson the right to receive an entire class of publications based solely on content. *Id.* at 415, 109 S.Ct. at 1882, 104 L.Ed.2d at 474 (determining that regulations operate neutrally so long as a publication is withheld based on security reasons without regard to content).[4] For the foregoing reasons, Defendants have not violated Olson's Constitutional rights. Since Olson has asserted no Constitutional violation, his claim based upon *Bivens* must fail.

Olson's assertion that his Constitutional rights have been violated is implausible. In considering the pleadings and affidavits submitted in this case, the Court has made all reasonable inferences in Olson's favor. Notwithstanding that fact, Olson has failed to show that a reasonable jury could infer from the facts the conclusions upon which he rests his claim.

### B. Qualified Immunity

Defendants have raised the issue of qualified immunity in this matter. The Court has determined, however, that Defendants' conduct did not violate Olson's Constitutional rights. Accordingly, the Court need not discuss whether Loy and Burns are shielded by the doctrine of qualified immunity. *See generally Cooper v. Smith*, 89 F.3d 761 (11th Cir.1996) (discussing the purpose and application of qualified immunity).

### CONCLUSION

The Court has considered Defendants' motion to dismiss or, in the alternative, for summary judgment, as well as Olson's arguments. For the foregoing reasons, Defendants' motion to dismiss is hereby **GRANTED IN PART and DENIED IN PART.** Defendants' motion for summary judgment, however, is hereby **GRANTED.** The Clerk is directed to enter the appropriate judgment.

---

jurisdiction thereof to the deprivation or any rights, privileges, or immunities *secured by the Constitution* and laws, shall be liable to the party injured....
42 U.S.C. § 1983 (emphasis added); *see also Lewis v. Casey*, —— U.S. ——, ——, 116 S.Ct. 2174, 2181, 135 L.Ed.2d 606, 620 (1996) (stating that actions under § 1983 are to vindicate "basic constitutional rights"); *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993) (stating that § 1983 does not provide a cause of action against federal officials, although nearly identical to a *Bivens* claim).

4. Although the Court is uncertain how Olson obtained a copy of the forbidden issue, it appears that he has reviewed the article in question. The Court notes that Defendants, theoretically, could be liable for damages if they violated Olson's Constitutional rights notwithstanding his subsequent receipt of the magazine. Based on the governing law, as applied to these facts, however, the Court has found no Constitutional violation for which Olson could pursue a claim under either *Bivens* or § 1983, if state actors were involved.