Joseph BARRON, an individual, Plaintiff,

v.

PUBLIC HEALTH TRUST OF DADE COUNTY, FLORIDA, d/b/a Perdue Medical Center, Terry Reardon, in her individual capacity and Sylvianne Ward, in her individual capacity, Defendants.

No. 97–1923–CIV.

United States District Court, S.D. Florida.

Aug. 21, 1998.

Thomas H. Buscaglia, Miami, FL, for Plaintiff.

Lee Krafchick, Ass't County Atty, Miami, FL, for Defendants.

### ORDER GRANTING INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS

MORENO, District Judge.

THIS CAUSE came before the Court upon Defendant Terry Reardon's Motion to Dismiss Amended Complaint (docket no. 17), and Defendant Sylvianne Ward's Motion to Dismiss Amended Complaint (**docket no. 27**).

THE COURT has considered the motions, responses and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ADJUDGED that the motions are GRANTED.

### I. BACKGROUND

This action arises from Plaintiff Joseph Barron's refusal to take part in the alleged altering and discarding of patient care plans and other medical records while he was employed at Perdue Medical Center (which is part of the Public Health Trust) as an Activity Director. Barron alleges that Defendant Terry Reardon and Linda Brewer, the Director of Nursing at Perdue, told Barron to participate in the altering and discarding of the records to prepare for inspections by the Joint Commission on Accreditation of Health Care Organizations and the Agency for Health Care, but that Barron refused because such actions are illegal. Barron further claims that he wrote a memorandum highlighting his concerns about the altering and discarding of the records, and subsequently disseminated that memorandum to, among others, Defendant Sylvianne Ward, the Vice President of Satellite Services for the Public Health Trust. Barron claims that Defendant Reardon retaliated against him by transferring one of Barron's subordinates to another department, thereby placing greater stress on Barron and his department, and by threatening to change Barron's work schedule to require him to work at night.

Barron further maintains that he wrote a second memorandum directed to Ward, which again expressed concern over the alteration of the medical records and complained about alleged retaliation by Reardon. Barron also asserts that when he attempted to return to work following an approved medical leave for heart surgery, Reardon refused to permit a modification of Barron's job duties, even though other employees at Perdue worked with modified duties due to various ailments. Barron claims that Reardon refused to modify his job duties in retaliation for Barron's statements regarding the alteration and disposal of the medical records, and that Reardon's actions constituted a con-

structive discharge that forced Barron to resign from his job with the Public Health Trust on or about January 13, 1997.

Barron has filed a five-count Amended Complaint against the Public Health Trust, Terry Reardon, and Sylvianne Ward, alleging violations of 42 U.S.C. § 1983 and Article 1, § 4 of the Florida Constitution. Counts III and IV allege that Defendants Reardon and Ward, respectively, deprived Barron of his First Amendment rights based on the actions outlined above. Both Defendants have filed motions to dismiss the amended complaint based on the doctrine of qualified immunity.

## II.  LEGAL STANDARD AND ANALYSIS

A court will not grant a motion to dismiss unless the plaintiff fails to prove any facts that would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *St. Joseph's Hospital, Inc. v. Hospital Corp. of America,* 795 F.2d 948 (11th Cir.1986).

### A.  Qualified Immunity

▮▮▮ Qualified or "good faith" immunity shields government officials from liability for civil damages arising out of the performance of their discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *L.S.T., Inc. v. Crow,* 49 F.3d 679, 683 (11th Cir.1995) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that

what defendant is doing violates federal law in the circumstances." *Id.* at 1150. Qualified immunity thus attaches unless "a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing. . . ." *Id.* at 1149.

In addition, Plaintiff "cannot carry [the] burden of proving the law to be clearly established by stating constitutional rights in general terms." *Foy v. Holston,* 94 F.3d 1528, 1532 (11th Cir.1996) (citing *Dartland v. Metropolitan Dade County,* 866 F.2d 1321, 1323 (11th Cir.1989)).

### 1.  Reardon's Motion to Dismiss

Defendant Reardon argues that she is entitled to qualified immunity because it is not clearly established that: 1) Barron's speech raised a matter of public concern; 2) Barron's interest in speaking outweighs the employer's interest in maintaining an efficient workplace; and 3) the alleged acts of retaliation constitute adverse employment action under the First Amendment. Since the Court finds that it is not clearly established that the alleged acts of retaliation constitute adverse employment action under the First Amendment, the Court need not address Reardon's other asserted grounds for dismissal.

#### a.  Whether Reardon's actions constitute adverse employment action

▮▮▮ The Court agrees with Defendant Reardon's arguments that it is not clearly established that Reardon's alleged actions in response to Barron's speech constitute adverse employment action under the First Amendment. Reardon's threat to transfer Barron to the night shift and the transfer of one of Barron's subordinates, rather than Barron himself, to a different unit do not clearly constitute unlawful retaliation under the First Amendment. *See, e.g., Rogers v. Miller,* 57 F.3d 986, 991–93 (11th Cir.1995) (reversing district court's denial of qualified immunity to defendants on plaintiffs' First Amendment claims because it was not clearly established that transferring employees, embarrassing an employee in front of others, warning employees to stay out of a sheriff's

reelection race and placing one employee on a chronic absentee list constituted adverse employment action).

The Court also concurs with Defendant's contention that it is far from clearly established that Reardon's action in requiring Barron to perform the physical duties of his job by not permitting him to return to work with a lifting restriction is an unlawful constructive discharge. Barron voluntarily resigned his position when his supervisor would not excuse him from performing certain physical duties. *See, e.g., Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir.1995) (noting that "employee resignations are presumed to be voluntary" and that "resignations can be voluntary even where the only alternative to resignation is facing possible termination for cause or criminal charges") (citations omitted). However, the supervisor did not even ask Barron to resign or threaten to fire him, as often occurs in similar employment disputes. *See, e.g., Barnette v. Folmar*, 64 F.3d 598, 601 (11th Cir. 1995) (reversing district court's denial of qualified immunity to defendants on constructive discharge claim because "giving [plaintiffs] the opportunity to resign [rather than being brought up on formal charges] could have reasonably seemed, in the light of pre-existing law from other circuits and the lack of law in this circuit, to be no discharge at all"); *Hargray*, 57 F.3d at 1568; *Hughes v. Alabama Dep't of Pub. Safety*, 994 F.Supp. 1395, 1405–07 (M.D.Ala.1998) (granting defendants' qualified immunity on plaintiff's constructive discharge claim, noting that there was no coercion or duress to establish constructive discharge since "this was not a situation in which a resignation from public employment has been requested by an employer").

There were avenues available for Barron to challenge his supervisor's decision in order to preserve his job, and requiring Barron to perform the physical duties of his job does not clearly constitute a constructive discharge. In addition, the Court cannot find, nor does Barron allege, that his working conditions were so intolerable that he was forced to quit or that a reasonable person would have quit under the circumstances.

*See, e.g., Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir.1993) (establishing constructive discharge requires plaintiff to show that his " 'working conditions were so intolerable that a reasonable person ... would be compelled to resign' ") (quoting *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir.1989)), *cert. denied*, 512 U.S. 1221, 114 S.Ct. 2708, 129 L.Ed.2d 836 (1994); *Hughes*, 994 F.Supp. at 1405 (noting that "a constructive discharge occurs when an employer makes working conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign") (citation omitted).

Plaintiff counters that Reardon retaliated against Barron by threatening to transfer Barron to the night shift, by transferring one of Barron's subordinates, and by refusing to allow Barron to return to work with the lifting restriction even though other employees with serious ailments were allowed to return to work. Barron argues that these actions constitute unconstitutional retaliation because they are likely to chill the exercise of constitutionally protected speech. Plaintiff argues that " '[t]his chilling effect can be accomplished through an unwanted transfer as well as through outright discharge.' " *Yoggerst v. Stewart*, 623 F.2d 35, 39 (7th Cir.1980) (quoting *McGill v. Board of Educ.*, 602 F.2d 774, 780 (7th Cir.1979)) Plaintiff further relies on various cases, most from outside this Circuit, to establish that transfers and reprimands can constitute adverse employment actions. However, as Reardon notes, Barron simply was not transferred, but rather one of his subordinates was, and Barron does not allege that anyone in this case received a reprimand. In addition, the Court notes that Barron's reliance on cases from other Circuits to show that the law is clearly established in this Circuit is misplaced. *See D'Aguanno v. Gallagher*, 50 F.3d 877, 881 n. 6 (11th Cir.1995) ("The remaining cases on which plaintiffs rely do not come from the U.S. Supreme Court, the Eleventh Circuit Court of Appeals, or the Florida Supreme Court and, therefore, cannot show that plaintiffs' right ... was clearly established.") (citing *Courson v. McMillian*, 939 F.2d 1479, 1498 n. 32 (11th Cir.1991)).

Plaintiff also relies on *Cooper v. Smith,* 89 F.3d 761, 764 (11th Cir.1996), in which the Eleventh Circuit found that a sheriff's refusal to renew a deputy's commission, resulting in his dismissal, following the deputy's cooperation with an investigation of corruption at the sheriff's department constituted adverse employment action for purposes of the First Amendment. However, the *Cooper* court framed the issue facing it as "whether a public official who terminates an employee for cooperating with law enforcement investigators is entitled to qualified immunity." *Id.* at 763. The court concluded that "[a]nanalysis of the case law reveals that it was clearly established at the time [the sheriff] refused to renew [the deputy's] commission that it was a violation of [the deputy's] First Amendment rights to take adverse action against him for cooperating with an official law enforcement investigation." *Id.* at 765. However, unlike in *Cooper,* here Barron was not "terminated," but rather he resigned when he was not allowed to return to work with a lifting restriction. The refusal to renew the deputy's commission at issue in *Cooper* is quite different from, and more severe than, Reardon's alleged actions in transferring one of Barron's subordinates, threatening to change Barron's schedule, and refusing to grant Barron the lifting restriction.

Barron further posits that the Eleventh Circuit has found that "[t]he First Amendment is implicated whenever a government employee is disciplined for his speech," *Waters v. Chaffin,* 684 F.2d 833, 837 (11th Cir. 1982) (citations omitted), and that it is a violation of clearly established law to discipline an employee for exercising his First Amendment right to speak. *See Berdin v. Duggan,* 701 F.2d 909, 913 (11th Cir.), *cert. denied,* 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983). However, Plaintiff "cannot carry [the] burden of proving the law to be clearly established by stating constitutional rights in general terms." *Foy,* 94 F.3d at 1532 (citing *Dartland,* 866 F.2d at 1323). The issue here is whether, for purposes of qualified immunity, Reardon's actions clearly amount to adverse employment action under the First Amendment. The Court concludes that the alleged actions do not clearly rise to this level.

The Court notes that it "voice[s] no opinion on whether, under these facts, the plaintiff[ ] might be able to establish a violation of [his] First Amendment rights. [The Court] hold[s] only that [Reardon is] immune from damages because no caselaw existing at the time of these events clearly established that such conduct, under the circumstances, constituted 'adverse employment action' prohibited under the First Amendment." *Rogers,* 57 F.3d at 992 (citation omitted).

### 2. Defendant Ward's Motion to Dismiss

Defendant Sylvianne Ward has also filed a motion to dismiss based on qualified immunity. Ward asserts that she was copied on one of the memoranda sent by Barron, and that Barron addressed another memo to her. The first memo expresses concern over the altering of records and complains about the reclassification of one of the employees in Barron's unit, and the second memo addresses numerous complaints including the alleged document alteration. Ward took no action in response to either memo.

█ Ward argues, and the Court agrees, that her entitlement to qualified immunity is even more compelling than Reardon's. Ward argues that neither Reardon's threat to reschedule Barron nor his resignation were mentioned in the memoranda. Ward asserts that Barron is improperly attempting to impose liability on the basis of respondeat superior. *See Busby v. City of Orlando,* 931 F.2d 764, 782 (11th Cir.1991) ("A supervisor cannot be held liable on the basis of respondeat superior for the acts of his inferiors under section 1983.") (citation omitted). Ward argues that she cannot be held liable merely because Barron sent her memos complaining about Reardon's conduct.

Barron counters that Ward had actual knowledge of the retaliation against Barron, and that Ward acted with reckless disregard for his federally protected rights by failing to stop the retaliation. Barron claims that a public official can be held liable for a decision that results in the deprivation of a person's constitutional rights where it was apparent that a constitutional deprivation would occur. Barron argues that the memoranda from

Barron make untenable Ward's claim that she did not know that Barron's constitutional rights were about to be violated.. Barron further maintains that the memoranda make clear that he was being retaliated against because of his protests regarding the destruction of the medical records.

However, the Court agrees with Ward's assertion that because Barron did not clearly suffer any adverse employment action as a result of any conduct by Reardon, Ward cannot be held responsible for Barron's injuries. Barron's claim against Ward relies in large part on Ward's alleged failure to end Reardon's challenged actions. Since the Court has found that Reardon is entitled to qualified immunity in that her treatment of Barron did not clearly amount to adverse employment action, the Court is led to the inescapable conclusion that Ward is also entitled to qualified immunity.

### III.   CONCLUSION

It is therefore

ADJUDGED that Defendant Terry Reardon's Motion to Dismiss Amended Complaint (docket no. 17), and Defendant Sylvianne Ward's Motion to Dismiss Amended Complaint (docket no. 27), are GRANTED. Counts III and IV of the Amended Complaint are therefore DISMISSED.