**Emma C. TAYLOR, Plaintiff,**

v.

**FLORIDA STATE FAIR AUTHORITY, Bob Crawford, John H. Stengel, Doyle E. Carlton, Jr., and C.H. "Bull" Rigdon, Jr., Defendants.**

No. 94–1376–Civ–T–17E.

United States District Court, M.D. Florida, Tampa Division.

March 1, 1996.

John J. Chamblee, Jr., Law Office of John J. Chamblee, Jr., Tampa, FL, Brian L. Weakland, Law Office of Brian L. Weakland, Tampa, FL, for Emma C. Taylor.

John W. Campbell, Michael Dennis Malfitano, Malfitano & Campbell, Tampa, FL, for Florida State Fair Authority.

Jeffrey S. Weiss, Rumberger, Kirk & Caldwell, P.A., Miami, FL, J. Scott Kirk, Rumberger, Kirk & Caldwell, P.A., Orlando, FL, for State of Florida Department of Agriculture and Consumer Services, Bob Crawford.

Steven R. Reininger, Hector E. Lora, Rasco & Reininger, P.A., Miami, FL, for John H. Stengel.

Martin Lee Garcia, Karen E. Ross, Hill, Ward & Henderson, P.A., Tampa, FL, for Doyle E. Carlton, Jr.

J. Ladon Dewrell, Law Office of J. Ladon Dewrell, Ft. Walton Beach, FL, for C.H. (Bull) Rigdon, Jr.

*ORDER ON DEFENDANT CARLTON'S MOTION FOR SUMMARY JUDGMENT; DEFENDANT RIGDON'S MOTION FOR SUMMARY JUDGMENT; AND DEFENDANT STENGEL'S MOTION FOR SUMMARY JUDGMENT.*

KOVACHEVICH, Chief Judge.

This action is before the Court on the following Motions and Responses:

1. Defendant Doyle E. Carlton, Jr.'s (hereafter "Carlton") motion for summary judgment on Count X of Plaintiff's first amended complaint, filed September 15, 1995. (Dkt. 112–114).

2. Plaintiff's response in opposition to Defendant Carlton's motion for summary judgment on Count X of Plaintiff's first amended complaint, filed October 18, 1995. (Dkt. 126, 129).

3. Defendant C.H. "Bull" Rigdon, Jr.'s (hereafter "Rigdon") motion for summary judgment on Count X of Plaintiff's first amended complaint, filed September 15, 1995. (Dkt. 115).

4. Plaintiff's response in opposition to Defendant Rigdon's motion for summary judgment on Count X of Plaintiff's first amended complaint, filed October 18, 1995. (Dkt. 127, 129).

5. Defendant John H. Stengel's (hereafter "Stengel") motion for summary judgment on all Counts in Plaintiff's first amended complaint, filed October 2, 1995. (Dkt. 118–119).

6. Plaintiff's response in opposition to Defendant Stengel's motion for summary judgment on all Counts in Plaintiff's first amended complaint, filed October 18, 1995. (Dkt. 128–129).

## PROCEDURAL HISTORY

On September 2, 1994, Plaintiff filed her initial complaint alleging job discrimination (Dkt. 1). On February 3, 1995, this Court granted Plaintiff's motion for leave to file a first amended complaint (Dkt. 42). Plaintiff's employment was terminated on April 18, 1995, and Plaintiff filed a verified complaint and a motion for preliminary injunction re-

garding the termination of her employment on April 19, 1995 (Dkt. 65, 66).

Plaintiff's hearing on the motion for preliminary injunction was held on May 18, 1995, before Magistrate Judge McCoun. On August 15, 1995, Magistrate Judge McCoun recommended that the motion for preliminary injunction be denied (Dkt. 106). This Court adopted that recommendation and entered an order denying the preliminary injunction on November 14, 1995 (Dkt. 133).

On September 15, 1995, Carlton and Rigdon filed their motions for summary judgment as to Count X in Plaintiff's first amended complaint (Dkt. 112–115). On October 15, 1995, Stengel filed his motion for summary judgment as to all Counts in Plaintiff's first amended complaint (Dkt. 118–119).

Thereafter, Plaintiff filed a motion for leave of court to file a supplemental complaint on November 30, 1995 (Dkt. 134) which was denied for failure to comply with Local Rule 3.01(g). On December 7, 1995, Plaintiff filed an amended motion for leave of court to file a supplemental complaint pursuant to Fed.R.Civ.P. 15(d) and to withdraw the verified complaint for injunctive relief (Dkt. 137). On February 5, 1996, this Court granted Plaintiff's motion for leave of court to file a supplemental complaint to aver that the April 18, 1995, firing was an additional retaliatory act (Dkt. 164).

Discovery was to be completed by both Parties on or before December 31, 1995, according to the Case Management Report (Dkt. 23). Trial was set to be scheduled within twenty (20) days on or after March 1, 1996 (Dkt. 24), but the Court *sua sponte* continued the trial until May 1996, based on the filing of five (5) additional motions for summary judgment.

Carlton's, Rigdon's and Stengel's first motions for summary judgment, as more specifically described above, are now before this Court (Dkt. 112–115, 118–119). As a basis for their motion for summary judgment, Carlton, Rigdon and Stengel all raise the defense of qualified immunity and assert that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred.

## STANDARD OF REVIEW

Summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the non moving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). Summary judgment is mandated when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1985).

In *Celotex*, the United States Supreme Court held:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial.

*Id.* at 322, 106 S.Ct. at 2552. The Court also stated: "Rule 56(e) therefore requires the non moving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (citations omitted).

Count X of Plaintiff's first amended complaint seeks damages pursuant to Section 42 U.S.C. Section 1983, alleging that Carlton, Rigdon and Stengel retaliated against Plaintiff for the filing of a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). As a basis for their motion for summary judgment, Carlton, Rigdon and Stengel all raise the defense of qualified immunity and assert that they were "acting within the scope of their discretionary authority when the allegedly wrongful acts occurred." *Hudgins v. City of Ashburn*, 890 F.2d 396, 404 (11th Cir.1989); *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988).

█ Qualified immunity protects government officials performing discretionary functions from civil trials and from liability if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). However, in order for the public official to use the qualified immunity defense, the public official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Rich,* 841 F.2d at 1558. Once the public official has made the required showing, the burden shifts to the plaintiff to demonstrate that the public official's actions violated clearly established constitutional law of which a reasonable person should have known. *Id.* at 1563–64.

Therefore, upon Defendants' showing that there is no genuine issue as to any material fact, this Court will then determine whether the Defendants have met their burden in proving that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred. If this Court finds that the Defendants have met their burden, this Court will then look to see if the Plaintiff has demonstrated that the Defendants' actions violated clearly established constitutional law of which a reasonable person would know. It is against the above analytical framework that this Court reviews Defendants' motions for summary judgment.

## DISCUSSION

*Carlton and Rigdon's Motion
For Summary Judgment
On Count X*

█ Carlton and Rigdon claim that the pleadings, depositions, answers to interrogatories, admissions and affidavits on file show that there is no genuine issue as to any material fact and that both of them are entitled to judgment as a matter of law.

This Court finds that the following facts are not in dispute:

1. In June, 1993, the Fair Authority (hereafter "Fair") voted not to renew the contract of the Fair's then executive director, Frank Ross.

2. A search committee was formed to locate a new executive director.

3. Plaintiff applied for the position.

4. On or about September 9, 1993, the Fair Authority voted to hire Steve Eckerson as the new executive director.

5. Approximately three months after Plaintiff was denied the promotion to executive director of the Florida State Fair, Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC"), stating that she was denied a promotion on the basis of her age and sex.

Thereafter, this Court finds a vast array of disputed facts put forth. Sometime during the spring of 1994, Mr. Gene Sorrows (hereafter "Sorrows") was allegedly hired by Carlton and Rigdon. The primary dispute centers around exactly what purpose Sorrows was hired for and whether such purpose was within Carlton and Rigdon's discretionary authority. Plaintiff asserts that not only is there a genuine issue as to the material facts regarding Sorrows, but that Sorrows was hired as a means of retaliation against Plaintiff and that such retaliation was not within Carlton and Rigdon's discretionary authority.

Carlton claims that he never directed Sorrows to initiate a "smear campaign" against Plaintiff. (Affidavit of Carlton, paragraphs 5, 8). Rather, Carlton claims that he merely asked Sorrows to provide Carlton with information regarding problems at the Fair, whomever was implicated. (Affidavit of Carlton, paragraphs 5, 8). On the other hand, Sorrows claims that Rigdon and Carlton hired him to develop and encourage news stories critical of Plaintiff and not for the sole purpose of investigating any possible improprieties that may have occurred. (Affidavit of Sorrows, paragraph 2).

Moreover, Sorrows claims that both Rigdon and Carlton hired him in an effort to have Plaintiff removed from her current position because she filed a complaint with the EEOC and the instant lawsuit. (Affidavit of Sorrows, paragraph 5). Sorrows claims that Rigdon asked for credit card information so that Plaintiff's dismissal could be justified to

other authority members. (Affidavit of Sorrows, paragraph 9.) Furthermore, in Plaintiff's supplemental complaint, Plaintiff alleges that her dismissal was an additional retaliatory act.[1]

Summary judgment is mandated only when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552 (1985). Furthermore, in order for the public official to use the qualified immunity defense, the public official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Rich*, 841 F.2d at 1558.

This Court finds that Plaintiff has established that there is a genuine issue of material fact which precludes summary judgment. While this Court finds that investigating any improprieties that may have occurred with an employee at the Fair may be within Carlton and Rigdon's discretionary authority,[2] Plaintiff has made a showing of disputed facts that allegedly take Rigdon and Carlton outside their discretionary authority.

Therefore, in light of the disputed facts, Carlton and Rigdon have not met their burden of proof in showing that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred. Accordingly, Carlton and Rigdon's motion for summary judgment as it pertains to Count X is hereby **denied.**

### Stengel's Motion for Summary Judgment

Stengel claims that the pleadings, depositions, answers to interrogatories, admissions and affidavits on file show that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law based on the doctrine of "qualified immunity" as it pertains to Count X. Furthermore, Stengel argues that the remainder of the Counts fail to support conduct demonstrating a conspiracy or retaliation taken by Stengel against Plaintiff and judgment should likewise be entered in Stengel's favor on these counts.

Once again, this Court finds that the following facts are not in dispute:

1. In June, 1993, the Fair Authority (hereafter "Fair") voted not to renew the contract of the Fair's then executive director, Frank Ross.

2. A search committee was formed to locate a new executive director.

3. Plaintiff applied for the position.

4. On or about September 9, 1993, the Fair Authority voted to hire Steve Eckerson as the new executive director.

5. Approximately three months after Plaintiff was denied the promotion to executive director of the Florida State Fair, Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC"), stating that she was denied a promotion on the basis of her age and sex.

Again, it is after this last fact where this Court finds a vast array of disputed facts. Stengel argues that Plaintiff's "... record developed to date makes good newspaper fodder but fails to legally support even a specific instance of conduct whereby Stengel knowingly discriminated against her, let alone, conspired." (Dkt. 118, p. 3). This Court does not agree. In Plaintiff's opposition, Plaintiff lists the following specific instances of conduct whereby a jury could infer that Stengel knowingly discriminated against Plaintiff, let alone, conspired:

---

1. While Plaintiff did not file her supplemental complaint until after Defendants' motions for summary judgment were filed, the firing of Plaintiff was the subject of Plaintiff's motion for preliminary injunction filed on April 19, 1995. Regardless, Carlton claims in his memorandum of law that "the instant case is even more deserving of summary judgment, however, because no adverse employment action was taken against Plaintiff." (Dkt. 113, p. 14). This Court refuses to gloss over Plaintiff's subsequent termination. While this Court does not make the specific factual finding that Plaintiff's subsequent termination was in fact a form of retaliation, at the same time, this Court does not find that Defendants have met their burden in proving otherwise. The facts surrounding the subsequent termination are not addressed by either party.

2. Such discretionary authority would apply to Rigdon only after he was hired by the Fair Authority.

1. Barbara Merritt attended the authority meeting on September 9, 1993, at which time Steven Eckerson was named as executive director. Mrs. Merritt approached Stengel after the vote and asked him to explain why the job was not given to Plaintiff. Mr. Stengel told her that "Mrs. Taylor did not get the job because 'the Department tied my hands.'" (Affidavit of Merritt, paragraph 6).

2. Stengel told Fair state member Ann Deen that he voted against Plaintiff because his "hands were tied". (Deposition of Deen, p. 3). Ann Deen further stated that Robin Turner was told that "he possibly would not be allowed to continue to serve on the board if Mrs. Taylor was chosen." (Deposition of Deen, p. 6).

3. Stengel told Mr. Weir that Stengel "made a cool $15,000.00 for getting him (Eckerson) the job," but did not identify who paid him the money. (Affidavit of Weir, paragraph 6).

4. Defendant Stengel further stated that the $15,000.00 was a "tip" paid to him for giving Eckerson the job and said he (Stengel) "didn't work for nothing." (Affidavit of Weir, paragraph 6).

5. Gene Sorrows states in his affidavit that Stengel telephoned Rigdon prior to the October 1994 Fair meeting to seek information critical of Plaintiff. In his discussions with Rigdon, Sorrows learned that Stengel was aware of the efforts of Rigdon and Carlton in trying to oust Plaintiff from her job, and that Stengel agreed to have Rigdon raise the issue of Plaintiff's dismissal at the October 1994 Fair meeting. (Affidavit of Sorrows, paragraph 8).

Summary judgment is mandated only when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552 (1985). Furthermore, in order for the public official to use the qualified immunity defense, the public official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Rich*, 841 F.2d at 1558.

This Court finds that Plaintiff has established that there is a genuine issue of material fact. In light of the disputed facts, Stengel has not met his burden of proof in showing that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Furthermore, in viewing all the evidence in a light most favorable to the nonmoving party (Plaintiff), this Court also finds that Stengel has not met his burden of proof as to all other Counts. Accordingly, Stengel's motion for summary judgment is hereby **denied.** Accordingly, it is

**ORDERED** that Carlton's motion for summary judgment as it pertains to Count X; Rigdon's motion for summary judgment as it pertains to Count X; and Stengel's motion for summary judgment on all Counts be **denied.**

**DONE** and **ORDERED.**