**Michael HARRIS and Charles Pottinger, Plaintiffs,**

v.

**The DISTRICT BOARD OF TRUSTEES OF POLK COMMUNITY COLLEGE; David Buckley, Individually and Officially as Director, Division of Career and Special Programs, Polk Community College; Don Shattler, Individually and Officially as Manager, Criminal Justice Program, Polk Community College; Marilyn Vanleer Peck, Individually and Officially as President, Polk Community College, Defendants.**

No. 96–2008–Civ–T–17–A.

United States District Court, M.D. Florida, Tampa Division.

June 18, 1998.

Mark Frederick Kelly, Kelly & McKee, P.A., Tampa, FL, for Michael Harris, Charles Pottinger.

Mark E. Levitt, Thomas R. Brice, Jr., Allen, Norton & Blue, P.A., Tampa, FL, for District Board of Trustees of Polk Community College, David Buckley, Don Shattler.

Thomas R. Brice, Jr., Allen, Norton & Blue, P.A., Tampa, FL, for Maryly Vanleer Peck.

*ORDER ON DEFENDANTS' MOTION TO DISMISS COUNT I OF THE THIRD AMENDED COMPLAINT AS TO PRESIDENT PECK, AND COUNTS II AND III OF THE THIRD AMENDED COMPLAINT AS TO ALL NAMED DEFENDANTS AND ORDER ON PLAINTIFFS' MOTION TO AMEND THIRD AMENDED COMPLAINT*

KOVACHEVICH, District Judge.

This cause is before the Court on Defendants' Motion to Dismiss Count I of Plaintiffs' Third Amended Complaint as to President Peck and Counts II and III as to All Named Defendants (Docket No. 23), Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint (Docket No. 24), Plaintiffs' Memorandum in Opposition to Motion to Dismiss Third Amended Complaint (Docket No. 28), Plaintiffs' Motion to Amend Third Amended Complaint (Docket No. 29), and Defendants' Memorandum in Opposition to Plaintiffs' Motion to Amend Third Amended Complaint (Docket No. 30).

## DEFENDANTS' MOTION TO DISMISS COUNT I OF THE THIRD AMENDED COMPLAINT AS TO PRESIDENT PECK, AND COUNTS II AND III OF THE THIRD AMENDED COMPLAINT AS TO ALL NAMED DEFENDANTS

### POSTURE OF THE CASE

The Third Amended Complaint in this action was filed on November 25, 1997. The relevant facts, as pled and accepted as true for the purposes of this motion only, are summarized as follows:

Defendant, District Board of Trustees of Polk Community College ("College") employed Plaintiffs, Michael Harris ("Harris") and Charles Pottinger ("Pottinger") as coordinators in the Criminal Justice Program. At all material times, Defendant Maryly Vanleer Peck ("Peck") was President of Polk Community College, Defendant David Shattler ("Shattler") was the College's Criminal Justice Manager, and David Buckley ("Buckley") was the College's Director of the Division of Career and Special Programs.

Plaintiffs allege that from January, 1994 to March, 1995, they made repeated yet unsuccessful attempts to prompt Defendants Buckley and Shattler to address the alleged irregularities and deviations from established law and policy occurring within the College's Criminal Justice Training Program ("Program"). On or about March 22, 1995, Plaintiffs, together with a third Coordinator, Frank Sypnewski, jointly presented a memorandum to Shattler reporting the alleged violations of Florida statutes and regulations, and their allegedly unsuccessful attempts to rectify the problems.

Plaintiffs further allege that when Shattler took no action in response to the memorandum, plaintiffs issued the same memorandum to the Florida Department of Law Enforcement ("FDLE"). Plaintiffs allege that immediately after Defendant Buckley learned that FDLE received the memorandum Buckley held a meeting with Plaintiffs, Sypnewski, and Shattler; threatened to fire the Plaintiffs because of the memorandum; and stated: "I have fired a complete department before and I will do it again if this is not resolved."

After the complaints were lodged with the FDLE and during the alleged FDLE investigation of Defendant College's Program, Buckley discharged Plaintiff Harris from employment. Buckley explained to Harris that his position was eliminated for budgetary reasons. Plaintiffs allege, however, that subsequent newspaper accounts along with the filling of Harris' position at a higher rate of salary show that budgetary considerations were not the true reason for Harris' dismissal. Plaintiffs allege that the true reason for Harris' discharge was in retaliation for sending the FDLE memorandum.

Further, Plaintiffs allege that subsequent to the distribution of the memorandum, Buckley and Shattler subjected Plaintiff Pottinger to a series of retaliatory acts including unmerited criticism; verbal harassment; a search through Pottinger's personal papers and a diary without notice, permission, or cause; the denial of Pottinger's request for continuing education; and an unjustified negative performance evaluation that recommended Pottinger's termination.

The Court takes notice of an ambiguously worded sentence in the Third Amended Complaint referring to Pottinger's negative performance evaluation, the recommendation for termination, and the reference to the memorandum. (Docket No. 19, ¶ 13). Though vaguely worded, it appears to the Court that the Plaintiffs allege that Pottinger's negative performance evaluation directly referenced the memorandum as a cause for the recommendation of Pottinger's termination. In addition, Plaintiffs allege that Shattler told Pottinger that he (Pottinger) was placed on probation until August, 1995 because he authorized the memorandum that prompted an FDLE investigation.

On March 22, 1996, Buckley summoned Pottinger to his office and allegedly told Pottinger that he was going to be terminated because of the memorandum that prompted the FDLE investigation. Plaintiffs allege that Buckley gave Pottinger the opportunity to resign in exchange for a good recommendation and the opportunity to teach at the College as an adjunct. Further, Plaintiffs allege that Buckley threatened Pottinger with negative evaluations that would hinder Pottinger's ability to teach in his field if Pottinger did not resign, again referring to

the memorandum sent to FDLE. When Pottinger declined to resign, Plaintiffs allege that Buckley handed Pottinger the negative evaluation and terminated his employment.

Plaintiffs also allege that the third Coordinator, and joint author of the memorandum, Sypnewski, was subjected to the same harassment and interview with Buckley at which time he elected to resign. Plaintiffs allege that during Pottinger's exit interview, Defendant Peck alluded to the memorandum as a negative factor contributing to Pottinger's termination.

Finally, Plaintiffs allege that on or around May 6, 1996 and May 19, 1996, Defendant Buckley published false and defamatory statements in a local newspaper indicating that Harris and Pottinger were not only responsible for rule violations reported to the FDLE but that they were terminated as a result of the violations.

### STANDARD OF REVIEW

Under *Conley v. Gibson,* a district court should not dismiss a complaint for "failure to state a claim unless it appears beyond a doubt the Plaintiff can prove no set of facts" that would entitle the Plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Bracewell v. Nicholson Air Services, Inc.,* 680 F.2d 103, 104 (11th Cir.1982). To survive a motion to dismiss, a Plaintiff may not merely "label" his or her claims. *Blumel v. Mylander,* 919 F.Supp. 423, 425 (M.D.Fla.1996). At a minimum the Federal Rules of Civil Procedure require a "short plain statement of the claim" that will "give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99 (quoting Fed.R.Civ.P. 8(a)(2)).

In deciding a motion to dismiss, a court can examine only the four (4) corners of the complaint. *See Rickman v. Precisionaire, Inc.,* 902 F.Supp. 232 (M.D.Fla.1995). The threshold sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (citation omitted). Also, a court must accept a Plaintiff's well pled facts as true and construe the complaint in the light most favorable to the Plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90

(1974); *see also Howry v. Nisus, Inc.,* 910 F.Supp. 576 (M.D.Fla.1995). However, when, on the basis of a dispositive issue of law, no construction of the factual allegations of a complaint will support the cause of action, dismissal of the complaint is appropriate. *See Executive 100, Inc. v. Martin County,* 922 F.2d 1536 (11th Cir.1991); *see also Powell v. United States,* 945 F.2d 374 (11th Cir.1991).

### DISCUSSION

The Third Amended Complaint contains the following causes of action against the College, Peck, Shattler and Buckley: Count I—Civil Rights Action, violation of 42 U.S.C. § 1983; Count II—violation of Florida Statutes § 112.3187(4)(a) and (b) (1996); and Count III—Invasion of Privacy Article I, § 23 of the Florida Constitution. The Court will discuss the grounds for dismissal and other issues raised by the defendants in the order they appear in their memorandum.

### Count I: Section 1983

#### A. Failure to State a Claim

Defendant Peck moves in her individual and official capacities to dismiss Count I for failure to state a claim. Three elements must be satisfied in order to state a *prima facie* case for a violation of plaintiffs' First Amendment rights: (1) defendant acted under the color of state law; (2) defendant deprived plaintiffs of their First Amendment rights; and (3) plaintiffs' rights were protected by the United States Constitution. *Al Coletta v. The City of North Bay Village,* 962 F.Supp. 1486 (S.D.Fla.1997) (citing *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

This Court has previously held that a higher pleading standard is required for cases involving government officials. *Andre v. Castor,* 963 F.Supp. 1158 (M.D.Fla.1997) (citing *Denno v. School Board of Volusia County,* 959 F.Supp. 1481, 1485 (M.D.Fla. 1997)). The standard varies from case-to-case, yet the allegations must be factual rather than conclusory. *Id.* The case must be pled with sufficient detail to put the defendants on notice of the nature of the claim so that they may adequately respond. *Id.*

(quoting *Brown v. Frey,* 889, F.2d 159, 170 (8th Cir.1989), *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990)).

First, plaintiffs allege that defendant Peck was acting in her official capacity as President of the College (Docket No. 19, ¶ 17). This Court has previously held in the case at bar that the defendant College is a state actor. *Michael Harris and Charles Pottinger v. The District Board of Trustees of Polk Community College, David Buckley, and Don Shattler,* 981 F.Supp. 1459 (M.D.Fla.1997). There is no dispute between parties that defendant Peck was acting under the color of state law. Therefore the Court finds that plaintiffs have sufficiently alleged that defendant Peck was acting under the color of state law at the time of the alleged actions.

Second, plaintiffs allege that defendant Peck deprived plaintiffs of their First Amendment right to freedom of speech and a right to petition without fear of redress. (Docket No. 19, ¶ 20). Plaintiffs allege that the memorandum contained negative allegations of wrongdoing by the College. The Third Amended Complaint specifically alleges that Peck referred to the memorandum as a "negative factor contributing to Buckley's decision to terminate Pottinger from employment with the college". *Id.* at ¶ 17. Peck's alleged comments specifically stated within the Third Amended Complaint are in and of themselves factual rather than conclusory. In the Memorandum in Opposition to Defendants' Motion to Dismiss, plaintiffs assert that defendant Peck's ratification of the retaliatory firing occurred when she acknowledged the memorandum in Pottinger's exit interview. (Docket No. 28, p. 2). Plaintiffs further state that Peck's reference to the memorandum indicates her knowledge of its contents and its contribution to Pottinger's termination. *Id.,* p. 3. Plaintiffs argue that Peck's ratification of the allegedly wrongful termination was a deprivation of Plaintiffs' First Amendment rights.

Based upon the pleadings and the law, the Court finds that plaintiffs have sufficiently alleged that the defendant's actions deprived plaintiffs of their First Amendment rights.

Third, plaintiffs allege that their speech is protected by the First and Fourteenth Amendments of the Constitution, actionable under 42 U.S.C. § 1983. (Docket No. 19, ¶ 25). While a State may not discharge an employee on a basis that infringes with his constitutionally protected speech, not all speech by public employees is protected. *Cooper v. Smith,* 89 F.3d 761, 764 (11th Cir.1996) (quoting *Rankin v. McPherson,* 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987)). The issue is whether the speech in question is protected by the First Amendment. In a claim of retaliation in violation of the First Amendment, the public employee's petition is subject to the public concern requirement, and if there is no matter of public concern, judicial inquiry should end. *Grigley v. City of Atlanta,* 136 F.3d 752, 755, 756, (11th Cir.1998).

In the case at bar, the speech at issue pertained to alleged improprieties and rule violations within the Criminal Justice Program at the College. Plaintiffs allegedly contacted the FDLE in a cooperative effort to address these concerns. It is established that corruption in a police department is unequivocally a matter of public concern. *Cooper v. Smith,* 89 F.3d 761, 764 (11th Cir.1996). Plaintiffs argue that the speech at issue in this case (the memorandum) is a matter of public concern because it pertained to quality control within the area of law enforcement. Additionally, plaintiffs assert that the speech was protected because they were acting in cooperation with law enforcement. Plaintiffs quote the court in *Cooper* which stated, "Clearly the law does not discourage public employees from cooperating with law enforcement in investigations of unlawful activities within their respective governmental organizations." *Id.* at 765. This Court agrees.

While the pleading is unclear as to whether the assertions in the memorandum included allegations of *illegal* activity, clearly the memorandum addressed alleged improprieties within the Program. The Criminal Justice Program operates within the jurisdiction of FDLE and trains officers in various disciplines. Thus the Program is sufficiently linked to law enforcement, and the speech in question is classified as a matter of public concern which thereby enjoys the protection

of the First Amendment. Therefore the plaintiffs have shown that their rights were protected by the United States Constitution.

Upon a review of the Third Amended Complaint, the motion, and the law, the Court finds that the plaintiffs have satisfied all three elements required to plead a *prima facie* case for a violation of plaintiffs' First Amendment rights within the higher threshold standard, and have sufficiently placed the defendant on notice as to the nature of the claim.

## B. Qualified Immunity

 Defendant Peck moves for dismissal on the basis of qualified immunity. Qualified immunity is a legal determination that must be made by the court either before trial, during trial, or after trial. *Al Coletta v. The City of North Bay Village,* 962 F.Supp. 1486 (S.D.Fla.1997) (quoting *Mincieli v. Bruder,* 914 F.Supp. 512, 516 (S.D.Fla.1994) aff'd. 73 F.3d 1107 (11th Cir.1995), *cert. denied* —— U.S. ——, 117 S.Ct. 294, 136 L.Ed. 2d 213 (1996)) (quoting *Stone v. Peacock,* 968 F.2d 1163, 1165–66 (11th Cir.1992)). Defendants properly reference the United States Supreme Court's urging courts to resolve questions of qualified immunity at the earliest possible stages of litigation. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3042–43 n. 6, 97 L.Ed.2d 523 (1987).

Defendants argue that plaintiffs have not set forth sufficient factual allegations to show that Peck's actions violated clearly established law. Referring to *Nieto v. San Perlita Independent School District,* 894 F.2d 174 (5th Cir.1990), defendants assert that, to remove the cloak of qualified immunity, claims must be plead with sufficient particularity with reference to the form, content, and context of the speech that prompted the alleged retaliatory conduct. Additionally, defendants cite *Foy v. Holston,* 94 F.3d 1528 (11th Cir. 1996) where the Eleventh Circuit reiterated the principle that the immunity defense will prevail in the balancing test employed to determine the existence of a constitutional violation, except for the extraordinary case where the conduct at issue was unlawful. Defendants aver that, in this case, plaintiffs failed to allege with particularity the acts allegedly committed by Peck which violated plaintiffs' First Amendment rights.

This Court looks to one of its prior rulings in *Andre v. Castor,* 963 F.Supp. 1158 (M.D.Fla.1997) where some of the facts are similar to the case at bar. In *Andre,* the defendants alleged that the plaintiff's pleading was insufficient, stating only that the law enforcement officer defendants "assisted" a third defendant in the improper act of seizing a video tape without a warrant. *Id.* at 1164. The Court found that, although the word "assisted" was conclusory, the acts of all three law enforcement officer defendants could be "fairly read to be in concert." *Id.* Finally, the Court held that the defendants, after reading the complaint, could certainly ascertain that they were being sued for their role in the allegedly illegal act. *Id.* Therefore, plaintiff's pleading was factually sufficient to notify defendants of the nature of the constitutional claims against them and to allow them to frame an argument with regard to qualified immunity. *Id.* "Discovery can flesh out the balance of the details." *Id.* The Eleventh Circuit Court of Appeals affirmed this Court's ruling on the law enforcement officer defendants, saying that they were not entitled to qualified immunity because "their conduct violated clearly established law." *Andre v. Castor,* No. 97–2396, slip op. at 5 (11th Cir.1998).

The Court takes notice of the Eleventh Circuit Court of Appeals' reversal in part of *Andre* as it pertained to the university official defendants. The Circuit Court of Appeals granted qualified immunity to the university officials in *Andre* because the plaintiff did not allege that they violated any clearly established law. *Id.* at 6. Specifically, the court said the only complaint against the university officials was that "they simply took too long to decide whether [the video tape] was obscene or not." *Id.* However plaintiffs in the case at bar specifically allege that the university official (Peck) violated a clearly established law.

Plaintiffs allege that President Peck conducted an exit interview with Buckley regarding Pottinger's wrongful termination. Plaintiffs further allege that Peck referenced the memorandum's negative impact on Pottinger's termination. Finally, plaintiffs allege that Peck's approval of the retaliatory

termination violated the Florida Whistle-blower Statute codified in Fl. St. § 112.3187; a clearly established law. Peck allegedly assisted in the wrongful termination by approving Buckley's actions with full knowledge that they were in retaliation for the whistleblower memorandum. Analogous to the law enforcement officer defendants in *Andre,* this Court finds that while the words "alluded to" are somewhat vague, the acts of Buckley and Peck can be fairly read to be in concert. Certainly, Peck has been adequately placed on notice as to the nature of the constitutional claims against her.

Further addressing the defendant's claim of qualified immunity, this Court applies a two step analysis as set forth by the Eleventh Circuit in *Lowe v. Aldridge,* 958 F.2d 1565, 1570 (11th Cir.1992) and used by the Southern District of Florida in *Coletta,* 962 F.Supp. 1486 at 1490. First, the defendant must show that she was acting within the scope of her discretionary authority when the allegedly wrongful activities occurred. *Id.* This Court has specifically referenced this prong in *Taylor v. Florida State Fair Authority,* stating that the public official bears the burden to prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred in order to use the qualified immunity defense. *Taylor v. Florida State Fair Authority,* 919 F.Supp. 410, 413 (M.D.Fla.1996).

If this first prong has been satisfied, the burden shifts to the plaintiff who must show a lack of good faith on the individual defendant's part. *Coletta,* 962 F.Supp. 1486 at 1490. For the purpose of a motion to dismiss, the plaintiff can meet this burden by showing that either the defendant's action violated clearly established constitutional law, or that the individual defendant's intent was to cause harm to the plaintiff regardless of the state of the law at the time of the conduct. *Id.* (quoting *Douthit v. Jones,* 619 F.2d 527 (5th Cir.1980)). In *Taylor,* this Court referenced the second prong by saying that the plaintiffs must show that the defendant's actions violated clearly established constitutional law of which a reasonable person would know. *Taylor,* 919 F.Supp. 410, 413 (M.D.Fla.1996).

In the case at bar, the defendant has failed to prove that Peck was acting within the scope of her discretionary authority when the allegedly wrongful acts occurred. The defendant explains the reason for granting qualified immunity to public officials, citing to *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 818, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). There is no dispute as to the importance of qualified immunity that shields officials from undue interference with their duties and from threats of liability that could threaten to disable the official's performance. "When an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken with independence and without fear of consequences." *Id.* at 818, 102 S.Ct. 2727. However, while the defendant has shown the general importance for qualified immunity, Peck has failed to sustain her burden of proving that she was acting within the scope of her discretionary authority at the time of the allegedly wrongful acts. Peck has failed to address her official duties that legitimately require action in which clearly established rights are not implicated.

Plaintiffs assert that Peck was acting outside of the scope of her discretionary authority, referring the Court to the previously discussed *Taylor* case. There this Court held that plaintiff's showing of an allegedly retaliatory dismissal took the defendants outside the scope of their discretionary authority. *Id.* at 414.

Qualified immunity is a necessary tool to alleviate a governmental official's fear of lawsuit (a fear that would stymie the work and dampen the ardor of all but the most resolute, or the most irresponsible public officials). *Cooper v. Smith,* 89 F.3d 761 (11th Cir.1996) (quoting *Harlow,* 457 U.S. 800 at 814, 102 S.Ct. 2727 at 2736, 73 L.Ed.2d 396) (quoting *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949)). At the same time, however, the shield of qualified immunity is not impenetrable. *Id.* The United States Supreme Court cites *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), saying: "When a state officer acts under state law in a manner violative of the Federal Constitution, he 'comes into conflict with the superior authority of that Constitution, ... [and][t]he

State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.'" *Scheuer v. Rhodes et al.,* 416 U.S. 232, 237, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Therefore, in light of the disputed facts, defendant Peck has not met her burden of proof in showing that she was acting within the scope of her discretionary authority when the allegedly wrongful acts occurred. Accordingly, defendant Peck's motion to dismiss on the grounds of qualified immunity is denied with the understanding that the issue may, of course, be raised on summary judgment at the appropriate time.

### Count II: Whistle-blowers Act Claims

#### A. Statute of Limitations

Defendants move to dismiss Count II because Plaintiffs failed to comply with the statute of limitations. Specifically, Defendants cite to the Florida Statute which states: "If the local governmental authority has not established an administrative procedure by ordinance or contract, a local public employee may within 180 days after the action prohibited by this section, bring a civil action in a court of competent jurisdiction." Fl. St. § 112.3187(8)(b).

Plaintiff Harris was terminated from his position on June 30, 1995, and Plaintiff Pottinger was terminated on April 5, 1996. The original Complaint in this matter was filed on October 4, 1996. According to the Defendants, the original Complaint was filed after the statutory time period of 180 days, and the Third Amended Complaint is therefore time barred.

Plaintiffs argue that although they were terminated on June 30, 1995, and April 5, 1996, respectively, it was only when the newspaper articles were published on or around May 6 and 19 1996, that they were apprised of the allegedly retaliatory motivation for their terminations. Plaintiffs assert that Florida generally follows the "discovery rule" for the purposes of determining when various tort causes of action accrue. Plaintiffs cite the Florida Supreme Court, Special Division B which held in *City of Miami v. Brooks* that the running of a statute begins upon notice of the allegedly wrongful act. *City of Miami v. Brooks,* 70 So.2d 306, 308

(1954). The Court also takes notice of *City of Miami* where the court explains the necessity of the discovery rule by evaluating the case of *Urie v. Thompson.* In *Urie,* an employee filed a claim for silicosis within three years of his discovery of the disease. *Id.* (quoting *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282). The employee had missed the statute of limitations, however, and the defendants moved for dismissal claiming a time bar. *Id.* The United States Supreme Court permitted the claim to be heard, reasoning that while the statute of limitations had run, there was no evidence presented to indicate that the employee knew or should have known of his condition at an earlier date. *City of Miami v. Brooks,* 70 So.2d 306, 308, (1954) (quoting *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282). Therefore, the Court held that the cause of action accrued at the time of diagnosis and not at the time that the employee unknowingly and unwittingly contracted the disease. *Id.*

This Court takes careful note of the following explanation offered by the Supreme Court in *City of Miami:*

> If Urie were held barred from prosecuting this action because he must be said, as a matter of law, to have contracted silicosis prior to November 25, 1938, it would be clear that the federal legislation afforded Urie only a delusive remedy. It would mean that, at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the low and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his fight to compensation at the ultimate day of discovery and disability.... We do not think the humane legislative plan intended such consequences to attach to blameless ignorance.

*Id.* at 309.

This Court also notes the Florida Supreme Court's decision in *Martin County v. Edenfield* where the court said that the Whistle–Blower's Statute is a remedial statute de-

signed to encourage the elimination of corruption by protecting public employees who "blow the whistle". *Martin County v. Edenfield,* 609 So.2d 27, 29 (1992). In *Martin,* the court said that the Whistle–Blower's Statute, should be construed liberally in favor of granting access to the remedy sought. *Id.* (quoting *Amos v. Conkling,* 99 Fla. 206, 126 So. 283 (1930)).

Finally, this Court looks to the language of the statute. The wording of the statute specifically says that the employee *may,* within 180 days after the action ..., bring a civil action in a court of competent jurisdiction. Fl. St. § 112.3187(8)(b) (emphasis added). The statute does not use the prohibitive word "must" when referring to the time limit. In addition, the legislative intent of the statute—to prevent agencies or independent contractors from taking retaliatory action against an employee who reports to an appropriate agency violations of laws, abuses of governmental offices, or the wasting of funds—is codified in subsection 2.

After a careful review of the statute and the aforementioned cases, this Court is convinced that the statute of limitations of Fl. St. § 112.3187(8)(b), when construed liberally in favor of granting plaintiff access to the remedy sought, accrues at the time that the plaintiff has knowledge of the allegedly wrongful act. To find otherwise would contravene the legislative intent of the statute and render its remedies delusive. In the case at bar, the Court finds a question of fact as to when the plaintiffs had knowledge of the allegedly wrongful terminations. Therefore, the Court denies defendants' motion to dismiss Count II of the Third Amended Complaint for a statutory time bar.

**B. Defendants Peck, Shattler, and Buckley in their Individual Capacities**

Defendants move to dismiss Count II as it pertains to Peck, Shattler, and Buckley in their individual capacities for lack of a cause of action. Defendants allege and plaintiffs concede that the Florida Whistle–Blower Act, Fl. St. § 112.3187 does not create individual liability.

Therefore, after reviewing the statute and the law, and upon finding no dispute between the parties on the interpretation of Fl. St. § 112.3187 as it pertains to individual liability, the Court will dismiss Count II of the Third Amended Complaint as it pertains to defendants Peck, Shattler, and Buckley in their individual capacities.

**C. Defendants Peck, Shattler, and Buckley in their Official Capacities**

Defendants move to dismiss Peck, Shattler, and Buckley in their official capacities. Defendants refer to subsection 6 of Fl. St. § 112.3187 which requires that disclosures regarding a community college be made to a "chief executive officer as defined in § 447.203(9) or other appropriate local official". Defendants allege that disclosure was only made to Shattler (Docket No. 23, ¶ 11), yet the Third Amended Complaint specifically alleges that the memorandum was sent to the Florida Department of Law Enforcement (FDLE). (Docket No. 19, ¶ 7).

Plaintiffs assert the FDLE memorandum fulfills the Fl. St. § 112.3187(6) requirement of notification to an "appropriate local official." Plaintiffs refer to Fl. St. § 943.03, conferring jurisdiction of the FDLE upon the Division of Criminal Justice Standards and Training which certifies schools to conduct such training courses. Finally, the plaintiffs cite Fl. St. § 943.09–12 which specifically states that, among numerous duties not listed herein, the FDLE is responsible for the administration of criminal justice schools and is empowered to certify and revoke certification of officers, instructors, and schools.

The Court is convinced that the "appropriate local official" within the meaning and intent of the statute was contacted in this case. Therefore, defendants' motion to dismiss Count II as it pertains to Defendants Peck, Shattler, and Buckley in their official capacities is denied.

**D. Defendant College**

No additional argument has been presented to the Court regarding the dismissal of Count II as it applies to the College. Therefore, the defendants' motion to dismiss Count II as it pertains to the College is denied.

### Count III: Invasion of Privacy Claim

Defendant Buckley, in his individual and official capacities, moves to dismiss Count III of the Third Amended Complaint for Invasion of Privacy. Plaintiffs claim an invasion of privacy under a false light theory against Buckley. Under this theory, the Court must decide whether a reasonable jury could view the publications as portraying the plaintiffs in a false light. *Kyser–Smith v. Upscale Communications, Inc.*, 873 F.Supp. 1519, 1527 (M.D.Ala.1995) (quoting *Faloona by Fredrickson v. Hustler Mag., Inc.*, 799 F.2d 1000, 1006 (5th Cir.1986)). Additionally, the Court must resolve any uncertainty in this step in favor of the plaintiff. *Id.*

The two essential elements for recovery under this theory are: (1) the false light must be "highly offensive to a reasonable person"; and (2) the defendant must have either acted knowingly or in "reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Kyser–Smith v. Upscale Communications, Inc.*, 873 F.Supp. 1519, 1527 (M.D.Ala.1995) (quoting *Schifano v. Greene County Greyhound Park, Inc.*, 624 So.2d 178, 180 (Ala.1993)). The Court finds that the plaintiffs have satisfied the first element. In viewing the evidence in a light most favorable to the plaintiffs, this Court finds that a question of fact exists as to whether the newspaper articles are highly offensive to the reasonable person. While the defendant argues that the quotes in the *Lakeland Ledger* merely indicate a disagreement between an employee and his boss, given the facts in this case a jury could find the statement "[plaintiffs] were part of the problem" to be highly offensive to a reasonable person.

The Court further finds that there is a question of fact as to whether Buckley's statements to the *Lakeland Ledger* were made with knowledge of or in reckless disregard of their falsities. Plaintiffs allege that they made numerous attempts to rectify the problems occurring at the College including writing a memorandum to Shattler and sending a copy of the memorandum to FDLE.

Plaintiffs further allege that as a result of the memorandum, FDLE began an investigation of the College. Upon learning of the FDLE investigation, Buckley allegedly threatened to fire plaintiffs and ultimately terminated Harris and Pottinger. Here, where Buckley not only knew about the contents of the memorandum but allegedly terminated plaintiffs because of it, knowledge that Pottinger and Harris were not "part of the problem" can be inferred along with reckless disregard for the statements' falsities. Accordingly, when viewing the allegations in a light most favorable to the plaintiffs, the Court finds that plaintiffs have met the second element for recovery and denies Defendant Buckley's motion to dismiss.

The Court emphasizes that these findings do not imply that Defendant Buckley should be held liable. Rather, the Court's ruling is merely that the pleadings, when taken in the light most favorable to the plaintiffs, compel the Court to deny Defendant's motion to dismiss Count III.

### PLAINTIFF'S MOTION TO AMEND THIRD AMENDED COMPLAINT

#### DISCUSSION

Plaintiffs request this Court permit an amendment to plaintiffs' Third Amended Complaint to add Defendant Polk Community College to the caption for Count I, and to amend the prayer for relief to Count I to award to the Plaintiffs prospective damages against defendant College. The Third Amended Complaint, Count I, seeks a Civil Rights Action violating 42 U.S.C. § 1983.

Plaintiffs argue that the allegations contained in Count I against Peck, Shattler, and Buckley in their official capacities are effectively against Defendant Polk Community College. (Docket No. 29, p. 2). However the United States Supreme Court has held that a municipality cannot be made liable under 42 U.S.C. § 1983 on a respondeat superior basis.[1] *Kentucky v. Graham*, 473 U.S.

---

1. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Kentucky v. Graham*, 473 U.S. 159, 168, 105 S.Ct. 3099, 3106, 87 L.Ed.2d

114 (1985) (quoting *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611)

159, 168, 105 S.Ct. 3099, 3016, 87 L.Ed.2d 114 (1985). In fact, a governmental entity is only liable under 42 U.S.C. § 1983 when the entity itself is a " 'moving force' behind the violation." *Id.* (quoting *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (quoting *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611)). Therefore, the "policy or custom" of the entity must have played a part in the alleged violation for the entity to be a party to a suit under § 1983. *Id.* No argument has been presented to the Court to indicate that the alleged violation in Count I of the Complaint was a policy, custom, or act committed by the College itself. Therefore the Court finds that no policy or custom existed to create liability for the College under § 1983.

### A. The College Remains Entitled to Eleventh Amendment Immunity

 Defendants claim that the College remains entitled to Eleventh Amendment Immunity. The Court agrees. Eleventh Amendment immunity bars federal suits against a state when the state has not waived its sovereign immunity. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S.Ct. 684, 688, 689, 121 L.Ed.2d 605 (1993). Waiver of Eleventh Amendment immunity will only be found where stated "by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673, 674, 94 S.Ct. 1347, 1360, 1361, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). In constructing 42 U.S.C. § 1983, Congress did not provide a waiver for Eleventh Amendment immunity. *Carr v. City of Florence, Alabama*, 916 F.2d 1521, 1525 (11 Cir.1990). As previously noted in this case, after reviewing the relevant statutes, this Court found the College to be a state actor with Eleventh Immunity protection. *Harris v. District Board of Trustees of Polk Community College*, 981 F.Supp. 1459, 1462 (M.D.Fla.1997). This Court reaffirms its prior ruling.

### B. Plaintiffs Efforts are Barred by the Doctrine of Res Judicata

 Defendants argue that plaintiffs' efforts to amend the Third Amended Complaint are barred by the doctrine of res judicata. Defendants assert the doctrine of res judicata which bars a subsequent suit if four elements are present: (1) a final judgment on the merits; (2) judgment was rendered by a court of competent jurisdiction; (3) identical parties in both cases; and (4) the same cause of action in both cases. *Thomas v. Evans*, 880 F.2d 1235, 1240 (11th Cir.1989). This Court entered an order on November 13, 1997 granting Defendants' motion to Dismiss Count I of Plaintiffs' First Amended Complaint as it pertained to the College with leave to amend the complaint as to Defendants Buckley and Shattler.

Plaintiffs do not contest that this Court has jurisdiction to hear the claim. The party in the motion to Amend the Third Amended Complaint (the College) is identical to the party named in the prior order (the College) where this Court found the College to be a state actor with Eleventh Amendment immunity. *Harris v. District Board of Trustees of Polk Community College*, 981 F.Supp. 1459, 1462 (M.D.Fla.1997). Finally, the cause of action has remained the same in the Third Amended Complaint and the Motion to Amend the Third Amended Complaint. Therefore, this Court finds the Plaintiffs' motion to Amend the Third Amended Complaint barred under the doctrine of res judicata. Accordingly, it is

**ORDERED** that Defendants' Motion to Dismiss (Docket No. 23) Count I as to Defendant Peck in her individual and official capacities be DENIED; Count II only as to Defendants Peck, Shattler, and Buckley in their individual capacities be DISMISSED; but DENIED in all other respects. Plaintiffs' Motion to Amend the Third Amended Complaint (Docket No. 29) be DENIED; and the Defendants **shall have** ten (10) days from this date to answer the Third Amended Complaint.